UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                         Criminal No. 21-1235 WJ

EDDIE ANTHONY GEORGE TRUJILLO,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

**THIS MATTER** comes before the Court upon Defendant's Motion to Suppress Physical Evidence and Statements (Doc. 29), filed September 27, 2021. Having reviewed the parties' pleadings and the applicable law, this Court **DENIES** the motion.

## BACKGROUND

Defendant is indicted on one charge of being a felon in possession of a firearm and ammunition. Defendant takes issue with four search warrants that were issued in connection with the investigation involving the Defendant. All four warrants describe a series of controlled purchases of heroin and firearms between a confidential human source ("CHS") and the Defendant. The suppression motion is largely based on Defendant's argument that the buys are described inconsistently in the various motions.

*Warrant No. 21-957*

In Warrant No. 21-957, FBI Task Force Officer Andrew Limon was authorized to monitor the location and movement of a telephone number believed to belong to Defendant. The

1

application described two controlled purchases that Defendant allegedly conducted with a CHS. The first controlled purchase was described as occurring in a public parking lot in the Northeast area of Albuquerque. It was alleged that Defendant and his girlfriend approached the CHS in a car. Defendant remained inside the car at all times while the girlfriend allegedly conducted the transaction on his behalf. The girlfriend exited the car, entered the CHS's car, and allegedly gave the CHS heroin in exchange for money. The second controlled purchase occurred "shortly after" the first when the CHS advised that he had spoken with Defendant about obtaining a firearm. He was then directed to enter a specific apartment to meet with Defendant to obtain a pistol.

*Warrant No. 21-1080*

The next warrant application requested records from AT&T Mobile on a phone number believed to belong to Defendant. In the application, FBI Special Agent Bryan Acee described the same controlled buys from the previous warrant. He wrote that both controlled buys occurred in July 2021. The first involved the CHS purchasing heroin from Defendant and the second involved the CHS purchasing a pistol from Defendant. He stated that both buys took place at a location other than Defendant's residence and that he was still trying to ascertain Defendant's home address. He noted that the CHS was anticipated to conduct a third controlled buy.

*Warrant No. 21-1149*

In the application for Warrant No. 21-1149, SA Acee requested to search 518 Valencia Drive S.E., Unit C in Albuquerque, New Mexico (hereinafter "Valencia address"). Law Enforcement believed that this address was Defendant's residence. The application also describes the first two controlled buys in addition to a third buy. It states the first buy occurred in an "area open to the public." It states that "Trujillo arrived at the meeting in the Subject Vehicle . . . CHS-1 provided Trujillo with the designated funds and Trujillo provided CHS-1 with a

2

distribution amount of heroin inside a plastic bag." It states the second buy was for a firearm and occurred at an apartment complex. It describes the third buy as occurring at the Valencia address where Defendant sold the CHS another firearm. This Warrant also explains information obtained from three different CHSs and a Citizen Witness ("CW") about Defendant being engaged in criminal activity.

*Warrant No. 21-1223*

The application for Warrant No. 21-1223 was for a search warrant for the premises at 11201 Lomas Boulevard N.E., Apartment 45, Albuquerque, New Mexico (hereinafter "Lomas address") which agents believed was the residence of the Defendant's girlfriend. They believed Defendant was staying there at the time. The search warrant authorized agents to search the premises and a vehicle, and seize Defendant's person to search him for gang tattoos. The application contains a transcript from the telephone call for the warrant as well as an attached affidavit. During the call, Agent Acee stated, "Two of the controlled buys were from this Lomas address . . . We purchased heroin and a firearm from this address." The attached affidavit describes the buys as the first being for heroin and occurring in an area open to the public; the second being for a firearm and occurring at an apartment complex; and the third being for a firearm and occurring at the Valencia address.

## **LEGAL STANDARD**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause entails "more than mere suspicion but less evidence than is necessary to convict," *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) (quotation and citation omitted), and "a fair probability that

3

contraband or evidence of a crime will be found in a particular place.'" *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Under *Franks v. Delaware,* a defendant can challenge a facially sufficient affidavit supporting a search warrant on the basis that the police knowingly, intentionally, or recklessly included false information. 438 U.S. at 155–56. A defendant is not entitled to a *Franks* hearing unless he makes a "substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." 438 U.S. at 155-56.[1] The affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory. *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990). Moreover, it is not enough for the defendant to show that the affiant knowingly falsified information or recklessly disregarded the truth, not simply that information was omitted from the affidavit or that the information wasn't completely true. *U.S. v. Owens*, 882 F.2d 1493, 1498-99 (10th Cir. 1989); *U.S. v. Green,* 175 F.3d 822, 828 (10th Cir. 1999) (noting that the *Franks* standard applies to affidavits in support of Title III intercepts). The test is whether the affidavit supports a finding of probable cause without the allegedly false information. *U.S. v. Morehead,* 959 F.2d 1489, 1498 (10th Cir.) *on reh'g sub nom. United States v. Hill*, 971 F.2d 1461 (10th Cir. 1992).

---

[1] *See, e.g., United States v. Bloomgren,* 814 F.2d 580, 584 (10th Cir. 1987) (affirming district court's denial of defendant's motion to disclose confidential informants)(citations omitted); *United States v. D'Armond*, 65 F. Supp. 2d 1189, 1199-1200 (D. Kan. 1999) (the rule in the Tenth Circuit is that to obtain disclosure of a confidential informant referred to in a search warrant affidavit the defendant must make a substantial showing that the affiant knowingly made false statements, or made statements with reckless disregard for the truth).

To show recklessness, the defendant must prove that the affiant in fact entertained serious doubts as to the truth of his allegations. *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1999). Recklessness may also be "inferred from omission of facts which are 'clearly critical' to a finding of probable cause." *DeLoach v. Bevers*, 922 F.3d 618. 622 (10th Cir. 199). The Court's "inquiry is focused neither on the existence nor the consequence of [the affiant's] error but on the intention behind it." *Beard v. City of Northglenn, Colo.* 24 F.3d 110, 116 (10th Cir. 1994). A defendant cannot make a substantial preliminary showing based solely on "[a]llegations of negligence or innocent mistake." *Bruner v. Baker*, 506 F.3d 1021, 1027 (10th Cir. 2007) (quoting *Franks v. Delaware*, 438 U.S. 154, 171).

**DISCUSSION**

  I.   *Whether Agent Acee Knowingly Falsified Information or Recklessly Disregarded the Truth*

In order to be entitled to a hearing, Defendant must first show that FBI Special Agent Bryan Acee knowingly, intentionally or recklessly included false statements in his affidavits. Defendant takes issue with the following portions of the series of warrants: 1) That Warrant No. 21-1080 alleges that the CHS made a controlled purchase of heroin from Defendant, but when that transaction is described in Warrant No. 21-957, it is Defendant's girlfriend who is handing the heroin to the CHS; 2) That Warrant No. 21-1223 alleges that the CHS purchased heroin from an address on Lomas Blvd., but Warrant No. 21-1149 states that the heroin purchase was made in an area "open to the public"; 3) That Warrant No. 21-1223 alleges that two of the controlled purchases occurred at the Lomas address but Warrant No. 21-1149 alleges that the only three controlled buys occurred in distinct locations; and 4) That the warrants state that Defendant sold heroin and firearms despite his affidavit stating he never made such sales.

a. Barela's Involvement in the First Controlled Purchase of Heroin

In Warrant No. 21-1080, SA Acee states that the CHS made a controlled purchase of heroin from Defendant in July of 2021. However, in Warrant No. 21-957, SA Limon describes this purchase in more detail, stating that the CHS observed Defendant and his girlfriend, Barela, approach him in a Lexus. Barela was driving. After she parked, she exited the car and got into CHS's car, where she gave him the heroin, and then returned to the Lexus. Defendant remained inside the Lexus during this exchange.

Defendant argues that the statement that the CHS purchased heroin from him is false because it was Barela who actually gave the heroin to the CHS. The Court disagrees. The first warrant, No. 21-1080, is not inaccurate merely because the second warrant expands on the details of the transaction. Simply because Barela is the one who physically handed the heroin to the CHS does not mean she was the one supplying the heroin. Rather, the reasonable inference drawn from the facts and totality of circumstances demonstrate that she assisted Defendant in allegedly supplying heroin to the CHS. In fact, the second warrant states that Barela conducted this transaction on Defendant's behalf. Therefore, the Court does not find this to be an inaccurate statement in the warrants.

b. Location of the Heroin Purchase

Page 8 of the application for Warrant No. 21-1149 states that the first controlled buy was for heroin and occurred in an area "open to the public." This is consistent with application for Warrant No. 21-957, which describes the purchase as occurring in a public parking lot in the Northeast Section of Albuquerque. These warrant applications state that the second and third purchases were for firearms and do not mention any purchase of heroin. However, during the telephone call to obtain Warrant No. 21-1223, Agent Acee stated, "During my investigation that

led to my obtaining the search warrant ending in 1149, we did a series of controlled buys. Two of the controlled buys were from this Lomas address, the current subject premises that we have eyes on. *We purchased heroin and a firearm from this address* (emphasis added)." In his attached written affidavit, he describes the buys differently, stating that the first purchase in the area open to the public was for heroin and the second and third buys were for firearms and occurred at an "apartment complex" and at the Valencia address respectively. The other warrant applications track this description. Defendant argues that SA Acee's verbal statement appears inconsistent with the other warrant applications as none of them describe a purchase of heroin occurring at the Lomas address and neither warrant application references the other.

Nevertheless, application for Warrant No. 21-957 seems to explain that the purchase of heroin occurred in the parking lot of the Lomas address. It states that the heroin purchase occurred in a public parking lot in the Northeast area of Albuquerque and, indeed, the Lomas address is in the Northeast area. This warrant application goes on to explain that shortly after the heroin purchase was conducted, the CHS asked about obtaining a firearm. He was then directed, and law enforcement observed, to enter a specific apartment to obtain the firearm. Thus, it appears that these two buys occurred in the same event in the same area with the first being conducted in the Lomas apartment complex's parking lot and the second being conducted in one of the apartments at that address. Therefore, based on the totality of the circumstances, the Court does not find this statement to be false.

    c.  <u>Addresses of the Controlled Buys</u>

Similar to Defendant's argument that there was a false statement made about heroin being purchased at the Lomas address, he argues that there was a false statement about whether the buys were conducted at the Lomas address or the Valencia address. He relies on the same statement

contained in application for Warrant No. 21-1223, where Agent Acee testified that two of the controlled buys happened at the Lomas Address. Defendant claims this is inconsistent with Warrant No. 21-1149, which states that the second controlled buy occurred at an apartment complex, but that the third controlled buy occurred at the Valencia address. As explained, this is consistent with the description that the first buy occurred in the parking lot of the Lomas address, the second occurred inside an apartment at the Lomas address, and the third buy occurred at the Valencia address. Therefore, the Court does not find this statement to be false.

      d. <u>Defendant's alleged sale of Heroin and Firearms</u>

Defendant contends generally that the warrant applications contain false statements that the CHS purchased heroin and firearms from him because this contradicts his affidavit. In his affidavit, Defendant states that he "never conducted a 'control buy' with CHS-1 or any human being in general for heroin or firearms." Nevertheless, Defendant has two prior felony convictions in Nevada for trafficking a controlled substance. Moreover, he has not shown a probability that the CHS was lying about the controlled purchases. *Unites States v. Artez*, 389 F.3d 1106, 1115 (10th Cir. 2004) ("[W]hat is needed is the probability of a lying or inaccurate informer . . ."). Lastly, he has not set forth any fact to show that even if the CHS was providing false statements and evidence to the Agents, that the Agents had any reason to know about this plot. *Id*. at 1116 (finding an "innocent explanation" insufficient to warrant a *Franks* hearing). Therefore, the Court does not find this to be an inaccurate statement contained in the warrant applications.

In sum, none of Defendant's contentions constitute reckless or intentional misrepresentations or omissions of material facts, which alone suffices to deny his request for a *Franks* hearing. Nevertheless, the Court will address whether the Affidavits are supported by probable cause.

## II. Whether the Affidavits Supported Probable Cause

To determine whether a warrant was supported by probable cause, the Court must consider the totality of the circumstances and any reasonable inferences from the information provided in the warrant application. *United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998). "Affidavits for search warrants must be tested in a common sense and realistic matter, and warrants issued thereon should not be interpreted hypertechnically." *United States v. Berry*, 423 F.2d 142, 144 (10th Cir. 1970).

Even if the first controlled purchase for heroin did not occur in the parking lot of the Lomas address, Agent Acee's characterization in application for Warrant No. 1223 of two of the buys occurring there would not render that warrant invalid. If that was a false statement, the question becomes whether the affidavit, purged of its falsities, would still be sufficient to support a finding of probable cause. *Franks*, 438 U.S. at 155-56.

If Agent Acee's statement was struck from application for Warrant No. 1223, the warrant would still be supported by his attached affidavit which describes the three controlled buys in a matter consistent with all of the other warrant applications: that the first buy was for heroin and occurred in the area open to the public, the second was for a firearm at an apartment complex, and the third was for a firearm at the Valencia address. Therefore, the same probable cause that supported the other warrants based on this information would apply to Warrant No. 1223 in the absence of Agent Acee's testimony.

Defendant further argues that this warrant and the other warrants lacked probable cause because they did not establish that drugs would be found at the Defendant's residence and that the information from CHS-1 was unreliable. However, substantial evidence supported the probable cause determination. Prior to conducting the first controlled purchase, a CHS reported to the FBI

that he had been personally present while Defendant conducted transactions for heroin and firearms with members of the SNM and Aryan Brotherhood gangs. At the direction of the FBI, the CHS then purchased two firearms from Defendant. Defendant told the CHS that he had access to dozens of firearms. Defendant sold one of the firearms to CHS from his residence where the CHS observed additional firearms in plain view.

Additionally, another CHS reported that he purchased firearms and heroin from Defendant in the past. He informed the FBI that members of the SNM gang went to Defendant when they needed firearms due to his steady supply. Yet a third CHS reported on another firearms transaction with the Defendant. Moreover, a Citizen Witness who lived in Defendant's neighborhood reported information on him. Even if there was no evidence that heroin would be found in Defendant's apartment, there was ample evidence to suspect that firearms would be found there. Furthermore, even if it was later determined that one of the CHSs had lied about certain information, the facts that were before the Magistrate at the time of issuance did not reflect this and were sufficient to find probable cause.

Defendant also asserted that there was insufficient evidence in application for Warrant No. 21-1149 to support a probable cause finding that he lived at the Valencia address. However, agents observed a CHS, who had known Defendant for two years, conduct a controlled buy of a firearm from Defendant at that address. A citizen witness also described the resident of that address which matched the description of Defendant, and confirmed that a photograph of Defendant was the resident. A series of 911 callers also described the resident of the address in a manner that matched Defendant's description. Finally, a vehicle registered to Defendant had been consistently parked in front of the address. Therefore, probable cause supported the finding that Defendant lived at the Valencia address.

Defendant also takes issue with the fact that the exact locations and dates of the controlled buys were not in the warrants, as well as certain vague words and statements such as "observed," "in the past," and "firsthand knowledge." He argues that the bases for one CHS and the CW's knowledge were not adequately explained nor was the manner of the pinging monitoring of Defendant's phone. Such details are not necessary to establish probable cause, especially in light of the other evidence—namely that three different CHSs identified Defendant as a firearms supplier and then the FBI observed three controlled purchases from Defendant, one at his apartment and one at his girlfriend's apartment. This demonstrates probable cause that a search of his apartment and a search of his girlfriend's apartment would uncover firearms. His further argument that there was no probable cause to search his girlfriend's apartment because there was no evidence that he was living there lacks merit in light of the two controlled purchases that involved the girlfriend and her apartment.

As a final note, even if one of the warrants somehow contained a deficiency, the agents executing them reasonably relied in good faith on warrants that appeared sound on their faces. *See United States v. Leon*, 468 U.S. 897 (1984).

## CONCLUSION

For the foregoing reasons, the Court finds that there was probable cause to support the issuance of the warrants and that Defendant has not met his burden to justify a *Franks* hearing or suppression of the evidence found in Defendant's residence or any of his statements.

**IT IS THEREFORE SO ORDERED** that Defendant's Motion to Suppress Physical Evidence and Statements (Doc. 29) is hereby **DENIED**.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE